IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JANEEN ACEY and AMBER HOPKINS, *et al.* | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Civil Action No. 8:18-cv-1395-PX |
| v. | * | |
| HMS HOST CORPORATION, *et al.* | * | |
| Defendants, | * | |
| *and*, | * | |
| AMY STORCH, *et al.* | * | |
| Plaintiffs, | * | |
| | * | Civil Action No. 8:18-cv-3322-PX |
| v. | * | |
| HMS HOST CORPORATION, *et al.* | * | |
| Defendants, | * | |
| *and*, | * | |
| ROLANDO FLORES, *et al.* | * | |
| Plaintiffs, | * | |
| | * | |
| v. | | Civil Action No. 8:18-cv-3312-PX |
| | * | |
| HMS HOST CORPORATION, *et al*. | * | |
| Defendants. | | |

\*\*\*
**<u>MEMORANDUM OPINION</u>**

Pending before the Court is the joint motion for settlement approval in three related collective action cases filed pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201

*et seq.*: *Acey v. HMS Host Corp.*, No. 8:18-cv-1395-PX, ECF No. 135; *Storch v. HMS Host Corp.*, No. 8:18-03322-PX, ECF No. 31; and *Flores v. HMS Host Corp.*, No. 8:18-03312-PX, ECF No. 31. One hundred and twenty-four opt-in Plaintiffs seek the Court's approval of a global settlement agreement and dismissal of their claims against Defendants HMS Host Corporation and HMS Host USA, Inc. (collectively, "HMS Host" or "Defendants"). *Acey*, ECF No. 135; *Storch*, ECF No. 31; *Flores*, ECF No. 31. The matter is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court GRANTS the parties' motion, approves the global settlement, and dismisses all three cases with prejudice.

## I.     Background

Defendants own and operate food and beverage franchises throughout the United States, principally in airports. *Acey*, ECF No. 96 ¶ 6. Plaintiffs comprise three groups of workers: (1) untipped "Quick Service restaurant" employees; (2) "warehouse runner/receiver/utility" employees; and (3) tipped waitstaff. *Acey*, ECF No. 135 at 2. Although the matter began as one action filed in the Western District of Tennessee, *Acey*, ECF No. 1 ¶¶ 14–19, the case was soon transferred to this District, *Acey*, ECF No. 78, 79, and the Plaintiffs voluntarily pursued a separate suit for each Plaintiff-subclass. Nonetheless, each case shares a common liability theory—that HMS Host used a centralized policy of "strictly enforcing" its labor budget to meet the company's budgetary demands, which also resulted in the corporation having underpaid its workers. *See Acey*, ECF No. 96 ¶ 14; *Storch*, ECF No. 1 ¶¶ 15–16; *Flores*, ECF No. 1 ¶¶ 15–16.

After the Court denied Defendants' motions to dismiss, the parties entered into lengthy settlement discussions. They also engaged in mediation on March 11, 2021. Shortly after, the parties reached a global settlement covering all three actions. *Acey*, ECF No. 135; *Flores*, ECF No. 28.

The settlement agreement awards a total of $275,000 to Plaintiffs, broken down as follows: $138,000 in damages for Plaintiffs, including a total $13,000 allocated to the six named Plaintiffs who assumed leadership roles in the litigation; $130,000 in attorneys' fees; and $7,000 of litigation expenses. *Acey*, ECF No. 135 at 3–4. From the $138,000, after deducting service awards, individual settlement payments will be allotted based on each Plaintiff's hours worked between August 24, 2014, and the settlement approval date. *Id.* at 4. Should this Court accept the agreement, the parties request that the actions be dismissed with prejudice. *Id.*

**II.     Standard of Review**

Congress enacted the FLSA to shield workers from substandard wages and working conditions arising from their unequal bargaining power. *See Brooklyn Saw Bank v. O'Neil*, 324 U.S. 697, 706 (1945). The FLSA ensures that workers receive, "[a] fair day's pay for a fair day's work." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981) (internal citation and quotes omitted). To that end, the FLSA's requirements are "non-waivable" and generally cannot be modified by contract or settlement. *See id.* at 740. Court-approved settlements are the exception to this rule, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Castro v. Early Learning Language Acads., LLC*, No. CBD-18-2421, 2021 WL 915106, at *2–3 (D. Md. Mar. 9, 2021).

When reviewing FLSA settlement agreements, "'district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*,'" *Hackett v. ADF Rest. Invs.*, 259 F. Supp. 3d 360, 365 (D. Md. 2016) (quoting *Beam v. Dillon's Bus Serv.*,

*Inc.*, No. DKC-14-3838, 2015 WL 4065036, at *3 (D. Md. July 1, 2015)), which provided that a settlement agreement must be "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1355. The Court considers (1) whether FLSA issues are actually in dispute; (2) the fairness and reasonableness of the settlement; and (3) the reasonableness of the attorneys' fees, if included in the agreement. *Hackett*, 259 F. Supp. at 365 (citing *Lynn's Food Stores*, 679 F.2d at 1355). These factors are likely satisfied where there is an "assurance of an adversarial context" and the employee is "represented by an attorney who can protect [her] rights under the statute." *Lynn's Food Stores*, 679 F.2d at 1354. The Court addresses each factor in turn.

### III. Analysis

#### A. *Bona Fide* Dispute

To determine whether a *bona fide* dispute over FLSA liability exists, the Court reviews the pleadings, any subsequent court filings, and the parties' representations in the proposed settlement. *Duprey v. Scotts Co.*, 30 F. Supp. 3d 404, 408 (D. Md. 2014) (citing *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. AJT-JFA-08-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)). Plaintiffs contend they are entitled to payment for uncompensated work and overtime hours, a claim which HMS Host disputes and argues is refuted by the pay stubs and time logs produced in discovery. *See Acey*, ECF No. 135 at 5–6. HMS Host also fully litigated pretrial motions against Plaintiffs' claims before agreeing to this settlement. *See Acey*, ECF No. 103, 110; *Flores*, ECF No. 15. Accordingly, the parties have demonstrated the existence of a *bona fide* dispute.

### B. Fairness and Reasonableness of the Settlement

Turning next to the fairness and reasonableness of the settlement terms, courts consider six factors: (1) the extent of discovery undertaken; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of plaintiff's counsel; (5) the opinions of counsel; and (6) the probability of the plaintiff's success on the merits, and the amount of settlement contrasted with the potential recovery. *Hackett*, 259 F. Supp. 3d at 365 (quotes omitted).

The Court finds that the global agreement is fair and reasonable. As to the first factor, the parties engaged in formal discovery that "produced hundreds of pages of timekeeping and pay compensation, with tens of thousands of lines of data, reflecting the hours worked, jobs performed, and pay received for each employee." *Acey*, ECF No. 135 at 6. Although voluminous, the discovery production was necessary for Plaintiffs' counsel to estimate properly the compensation owed to each opt-in Plaintiff, and thus, the range of recovery were they to prevail on every claim. *Id.* 6–7.

As to the second factor, this action has already proven to be logistically complex, and no doubt expensive. The parties have been litigating this case since August 2017. *See Acey*, ECF No. 1. During the past several years, Plaintiffs have coordinated 124 claimants across the country, transferred judicial districts, litigated dispositive pretrial motions, and filed three separate actions to accurately capture the different employee groups with claims against HMS Host. Settling the matter now, and avoiding further costly litigation, appears the most prudent course of action for the Plaintiffs.

As to the next three factors, the Court finds Plaintiffs' counsel to be practiced and competent. Plaintiffs' counsel has extensive experience representing plaintiffs in FLSA cases,

including collective actions. *Acey*, ECF No. 135-3. Likewise, the proposed settlement appears to be the product of substantial, good-faith negotiations, and no evidence suggests any fraud or collusion. *Acey*, ECF No. 135 at 6. The settlement agreement was reached after Plaintiffs' counsel calculated the maximum potential damages using the material produced in discovery. *Id.* at 4, 7. Plaintiffs' counsel appear to have approached the negotiations with an informed understanding of the potential weaknesses and strengths in their clients' cases. The Court finds no reason to reject the recommendation of Plaintiffs' counsel to settle the cases.

The sixth factor also weighs in favor of settlement approval. Plaintiffs' counsel estimates the total potential recovery for the *Acey*, *Storch*, and *Flores* matters "should [they] prevail on every single factual and legal point in a trial" to be $429,218.85. *Id.* at 4. Thus, the $138,000 allocated for damages in the proposed settlement represents approximately 32.15% of the Plaintiffs' total potential recovery. *Id.* Additionally, the parties highlight their ongoing dispute as to the applicable statute of limitations relevant in all three matters. An unfavorable ruling on this issue would risk diminished or no recovery for Plaintiffs. *Id.* at 7. Accordingly, the settlement agreement represents a fair and reasonable compromise to mitigate potential pitfalls associated with going to trial.

### C. Attorneys' Fees

Finally, the Court must independently assess the reasonableness of the requested attorneys' fees. *Saman*, 2013 WL 2949047, at *6. Courts typically evaluate the reasonableness of an attorney's fee by applying the lodestar method, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008) (citations omitted). The Court's local rules provide presumptively reasonable hourly rates keyed to an attorney's years of legal experience. *See* Loc. R. App. B. The Court also considers

the following non-exhaustive factors when assessing the overall reasonableness of attorneys' fees:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) the attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).

Turning first to the hourly rates requested from Plaintiffs' counsel, Russ Bryant and Gordon E. Jackson acted as lead counsel, each having amassed significant experience in employment law and collective actions. *Acey*, ECF No. 135-3 at 1–2. They were assisted by four associates, Robert E. Turner IV, Robert E. Morelli III, Nathan Bishop, and Paula Jackson, and by several law clerks and paralegals. *Id.* Each attorney's hourly rates are well-within the presumptively reasonable rates outlined by this jurisdiction's Local Rules. *See* Loc. R. App. B.

As for the number of hours worked, counsel expended a total of 785 hours on this action, and the paralegals and law clerks 121 hours. *Acey*, ECF No. 135 at 9. Given the size and complexity of the cases, and the protracted nature of settlement discussions, the hours expended are likewise reasonable. Accordingly, the requested total of $130,000 in attorney's fees is approved. *See id.* at 5.

Lastly, Plaintiffs' counsel requests $7,000 in expenses. The $7,000 sum comprises costs associated with filing fees, mediation charges, legal research, case-related travel, postage, and social media and website marketing. *Acey*, ECF No. 135-3 ¶ 16. Considering the expenses associated with prosecuting a case of this magnitude, the requested court costs are similarly reasonable and shall be approved.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the motion to approve settlement. A separate order will follow.

October 18, 2021                                                             /S/
Date                                                                               Paula Xinis
                                                                                   United States District Judge